**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JEROME PHILLIPS,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-25-01082-JD |

**ORDER**

Before the Court is Defendant Equifax Information Services LLC's Motion to Dismiss Plaintiff Jerome Phillips's Complaint ("Motion to Dismiss") [Doc. No. 6]. Mr. Phillips filed a response in opposition [Doc. No. 9] and an affidavit in support of his response [Doc. No. 10]. Equifax filed a reply [Doc. No. 11]. Mr. Phillips also filed a supplemental brief and notices of supplemental authority. *See, e.g.*, [Doc. Nos. 15, 16, 18, 25, 26].[1]

Having carefully reviewed the record, the parties' submissions, and the applicable law, the Court grants the Motion to Dismiss and dismisses without prejudice Mr. Phillips's Complaint.

---

[1] The Court has reviewed and considered the supplemental authority provided by Mr. Phillips, including the notices he filed after the Court stated that no additional filings should be made without leave of Court. *See* [Doc. Nos. 17, 19].

## I. BACKGROUND

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the well-pled factual allegations in the complaint as true and views them in the light most favorable to the plaintiff. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). The Court applies this standard to the following facts asserted in Mr. Phillips's Complaint. Compl. [Doc. No. 1].

Mr. Phillips alleges that he is a consumer as defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and that Equifax is a consumer reporting agency ("CRA") that prepares and furnishes consumer reports to third parties. Compl. ¶¶ 6, 8. Mr. Phillips obtained a copy of his consumer credit disclosure from Equifax in September 2025. *Id.* ¶¶ 9, 11. Mr. Phillips alleges that Equifax failed to comply with the obligations under 15 U.S.C. § 1681g(a) to clearly and accurately disclose all information contained in his consumer file, subject to the statutory exception regarding truncation of Social Security numbers. *Id.* ¶¶ 10, 12, 13, 41, 42.

Mr. Phillips alleges that Equifax's disclosure contained missing information and omitted the full account numbers and payment history relating to three Dept of Ed/Aidvantage trade lines. *Id.* ¶¶ 12, 41. He alleges that Equifax uses a template that extracts information from a consumer's file and populates that information into various preprogrammed fields. *Id.* ¶ 29. He further contends that every consumer who received a disclosure from Equifax through www.annualcreditreport.com after the template was implemented and whose disclosure contained missing information received a disclosure

containing the same errors as Mr. Phillips's. *Id.* ¶ 33. He asserts that Equifax's failure to disclose all information in his consumer credit file is an intentional violation of the FCRA and is motivated by Equifax's desire to avoid costs and increase profits. *Id.* ¶ 37. Equifax moves for dismissal under Rule 12(b)(6).

## II. LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a complaint does not need detailed factual assertions, a pleading that offers only "labels and conclusions" or "pleads facts that are merely consistent with a defendant's liability" will not suffice. *Id.* (internal quotation marks and citations omitted). The burden is on the plaintiff to plead factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Under this standard, the Court accepts all well-pled factual allegations as true and views the allegations in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). Conclusory statements, however, are not entitled to the assumption of truth and courts are free to disregard them. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in his complaint, but the elements of

each cause of action help to determine whether the plaintiff has set forth a plausible claim. *Id.* at 1192. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted).

Mr. Phillips is proceeding pro se; thus, the Court must construe his pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Court may not "assume the role of advocate for the pro se litigant." *Id.* Nor should the Court "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record" or "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005); *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

## III. ANALYSIS

### A. Mr. Phillips fails to allege facts sufficient to establish Article III standing.

As a threshold matter, the Court must determine whether Mr. Phillips has alleged a concrete injury sufficient to establish Article III standing. *See Hobby Lobby Stores, Inc.*

*v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013) (en banc) (explaining that whenever standing is not clear, the court must consider it *sua sponte* to ensure there is an Article III case or controversy). "To have standing, a plaintiff must show that [he] '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1190 (10th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). An injury in fact must be both "'concrete and particularized' and 'actual or imminent.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Although a concrete injury need not be tangible, it must be "real" rather than "abstract." *Lupia*, 8 F.4th at 1190 (citation omitted). Moreover, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341. Thus, a plaintiff does not automatically satisfy Article III merely by alleging a violation of the FCRA. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426–27 (2021); *see id.* at 434 (explaining that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm"). As the party invoking federal jurisdiction, Mr. Phillips bears "the burden of demonstrating that [he has] standing." *Id.* at 430–31.

Here, Mr. Phillips alleges that Equifax violated 15 U.S.C. § 1681g by failing to clearly and accurately disclose all information contained in his consumer file. However, the Complaint fails to allege facts establishing that Mr. Phillips suffered a concrete injury as a result of the alleged statutory violations. He does not identify any economic injury in

his Complaint but rather asserts that Equifax provides "free annual disclosures." Compl ¶ 37. He alleges that "[t]he lack of accurate, full account numbers, missing account information and payment history caused [him] great frustration and emotional distress when trying to understand his credit report and verify it against his own records." *Id.* ¶ 26.

These conclusory allegations, however, are not sufficient to confer standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (explaining that a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"). The Complaint contains no factual allegations describing the nature, severity, duration, or consequences of the alleged distress. Nor does Mr. Phillips allege that Equifax furnished inaccurate information to any third party, that he was denied credit, that the terms of any existing credit account were changed, that he was charged a higher interest rate, or that he otherwise suffered any adverse credit consequences as a result of the alleged omissions in Equifax's disclosure.

Mr. Phillips's generalized assertions of frustration and emotional distress in trying to understand his credit report are insufficient to establish a concrete injury under Article III. *See Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 828, 830 (10th Cir. 2022) (explaining that allegations of confusion are insufficient to satisfy Article III standing when there is no concrete injury or asserted harm that has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit under common law).

Accordingly, Mr. Phillips has failed to allege facts sufficient to establish Article III standing.[2]

### B. Mr. Phillips fails to state a plausible claim for a violation of § 1681g of the FCRA.

Equifax contends that Mr. Phillips fails to state a plausible claim under § 1681g because the incomplete account numbers and missing information do not bear on his

---

[2] Mr. Phillips relies on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), for the proposition that the invasion of a statutory right may itself constitute an injury sufficient to confer Article III standing. *See* Compl. ¶ 25. In *Havens Realty*, the Supreme Court held that a housing tester had standing to challenge discriminatory representations concerning housing availability even though she had no intent to rent or purchase an apartment. *Id.* at 374. The Court reasoned that the Fair Housing Act created an enforceable right to truthful housing information and that the plaintiff had been denied the very information to which the statute entitled her. *Id.* at 373–74.

*Havens Realty*, however, predates the Supreme Court's subsequent clarification of Article III's concrete-injury requirement. In *TransUnion*, the Court explained that a statutory violation does not automatically establish a concrete injury merely because Congress has created a cause of action. *TransUnion*, 594 U.S. at 426–27. The distinction is particularly important in the FCRA context. In *TransUnion*, some class members alleged that TransUnion had violated the FCRA by maintaining misleading information in their credit files, but their credit reports were never disseminated to third parties. *Id.* at 433–34. The Court held that those plaintiffs lacked standing because they had not suffered the concrete reputational harm that would ordinarily result from dissemination of the misleading information. *Id.* at 434 ("In cases such as these where allegedly inaccurate or misleading information sits in a company database, the plaintiffs' harm is roughly the same, legally speaking, as if someone wrote a defamatory letter and then stored it in her desk drawer. A letter that is not sent does not harm anyone . . . ."). Thus, *TransUnion* establishes that a FCRA plaintiff must show more than the bare violation of a statutory requirement; the alleged violation must result in, or bear a sufficiently close relationship to, a concrete harm recognized by Article III.

Accordingly, *Havens Realty* does not establish that every deprivation of information created by a federal statute constitutes an Article III injury. Rather, after *TransUnion*, the relevant inquiry is whether the particular deprivation alleged by the plaintiff constitutes a concrete injury, notwithstanding Congress's decision to make the underlying conduct unlawful.

creditworthiness and therefore do not constitute inaccurate information. Motion to Dismiss at 5–6. Section 1681g requires a CRA, upon request, to "clearly and accurately disclose to the consumer [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a). As the Supreme Court has recognized, the purpose of § 1681g is to enable consumers to learn "of any inaccuracies in their credit files so that they can promptly correct the files before they are disseminated to third parties." *TransUnion*, 594 U.S. at 440; *see also Ward v. Nat'l Credit Sys., Inc.*, 182 F.4th 918, 928–29 (10th Cir. 2026) (stating "that the entire focus of the FCRA's obligations . . . is to prevent *inaccurate* reporting"). Recently, in the context of a FCRA unreasonable investigation claim against the furnisher of information to a CRA, the Tenth Circuit concluded that for a consumer to establish a prima facie case, the consumer must establish that the "information was in fact inaccurate or incomplete." *Ward*, 182 F.4th at 929; *see also Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751 (10th Cir. 2009) (unpublished) (reiterating that a successful FCRA claim must be based on inaccurate information disclosed in the consumer credit report and because the plaintiffs had no evidence indicating that the credit reports were inaccurate, the defendant was entitled to summary judgment) (citing *Cassara v. DAC Servs., Inc.*, 276 F.3d 1210, 1217 (10th Cir. 2002)).

District courts within the Tenth Circuit have similarly concluded that to state a claim under § 1681g, a plaintiff must allege facts to show an "inaccuracy in the credit report issued by" the CRA defendant or plead specific facts supporting the inference that

the CRA failed to disclose all of the information in the consumer's file.[3] *See Lewis v. Midland Credit Mgmt.*, CIV-15-1052-R, 2016 WL 4747414, at *2 (W.D. Okla. Sept. 12, 2016); *see also Dotson v. Nat'l Consumer Telecomms. & Util. Exch., Inc.*, Case No. CIV-25-1171-SLP, 2026 WL 575337, at *2 (W.D. Okla. Mar. 2, 2026); *Scott v. Equifax, Inc.*, Case No. 2:20-cv-2516-HLT-JPO, 2021 WL 4099007, at *2 (D. Kan. July 23, 2021). When assessing compliance with § 1681g, courts consider whether the disclosure clearly and accurately communicates the information in the consumer's file in a manner that an average consumer can understand. *Dotson*, 2026 WL 575337, at *2 (citing *Shaw v. Experian Info. Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018)). Considering the text of § 1681g and this persuasive authority, the Court alternatively determines that Mr. Phillips has failed to allege a plausible violation of § 1681g.

Here, Mr. Phillips identifies account data that allegedly was not included in his consumer disclosures, including payment history, credit limits, scheduled payment amounts, dates of last activity, and other information. *See* Compl. ¶¶ 12, 13, 41; *see also* [Doc. No. 1-3]. He also alleges that truncated account numbers were used. But he does not allege facts explaining how the alleged omissions rendered the disclosures inaccurate or misleading. Nor does Mr. Phillips allege that the purported omissions prevented him from identifying or disputing inaccurate information in his file. Mr. Phillips assumes that

---

[3] Equifax cites to no Tenth Circuit authority substantively addressing violations of § 1681g, and the Court is aware of none.

the omission of any information, without more, constitutes a violation of § 1681g. That is not enough to state a plausible claim under the FCRA.

Mr. Phillips also alleges that Equifax violated § 1681g by disclosing only truncated account numbers. The Court is not persuaded that this allegation, standing alone, states a plausible claim. Mr. Phillips does not allege that the shortened account numbers rendered the disclosures inaccurate. Nor does he allege that the truncation impaired his ability to dispute inaccurate information.

Absent factual allegations that the abbreviated account numbers frustrated the statutory purpose of § 1681g—to enable consumers to review and correct information contained in their files—the Complaint fails to plausibly allege that the disclosures were not clear and accurate. *See* 15 U.S.C. § 1681g(a); *cf. Dotson*, 2026 WL 575337, at *3 (explaining that utilization of a truncated account number is a reasonable practice to guard against identity theft and concluding that holding a CRA liable for reporting a truncated account number that a creditor furnished "would lead to absurd results"); *Whitaker v. Trans Union Corp.*, Civil Action No. 03-2551-GTV, 2005 WL 8160827, at *20 (D. Kan. Feb. 3, 2005) (same). Accordingly, Mr. Phillips has failed to state a plausible claim for relief under § 1681g.

## IV. CONCLUSION

Based on the foregoing reasons, the Court GRANTS Equifax's Motion to Dismiss [Doc. No. 6]. Mr. Phillips's Complaint [Doc. No. 1] is DISMISSED WITHOUT PREJUDICE for lack of Article III standing. Alternatively, even assuming Mr. Phillips

has standing, the Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6). A separate judgment will follow.

IT IS SO ORDERED this 24th day of September 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE